UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

FILED

APR 1 3 2010

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| RELATOR, LARRY MILLER, | § |
|     (Plaintiffs/Complainants) | § |
| | § |
| vs. | § |
| | § |
| MEDICAL CENTER HOSPITAL | § |
| DISTRICT, d/b/a MEDICAL CENTER | § |
| HOSPITAL and COMPLETE RX | § |
| LIMITED, INC. | § |
|     (Defendants) | § |

CAUSE NO.

MO-10-CV 042

## COMPLAINT

COMES NOW, UNITED STATES OF AMERICA, RELATOR, LARRY MILLER,

Plaintiffs/Complainants and complaining of MEDICAL CENTER HOSPITAL DISTRICT, d/b/a

MEDICAL CENTER and COMPLETE RX LIMITED, INC., here after called Defendants and

would show the Courts as follows, to wit:

### Sealing

1.     It is hereby requested that this Court enter an Order placing this Complaint under seal for

sixty (60) days.  It maybe that later, such sixty (60) days may be requested to be extended.

2.     There are times when this cause of action(s) is called a Whistle-blowers Suit, Lincoln

Law, and/or Qui- Tam Enforcement Act.

### Jurisdiction/Venue

3.     This action is brought under the provision of 31 U.S.C § 37 29 et al.

The matters contained herein all occurred within the political boundaries of Odessa, Ector

County, Texas.  This Court has jurisdiction over both of the Defendants named hereafter.

1

4.     Under the provisions of 31 U.S.C. § 3729, liability for certain acts, the

Plaintiffs/Complainants states there have been violations by the Defendants, jointly and

severally,  by the following: (1) knowingly  presenting, or cause to be presented, to an officer or

an employee of the United States Government or a member of the Armed Forces of the United

States a fraudulent claim for payment or approval.  (2) Defendants knowingly made, used, or

caused to be made or used, a false record or statement to yet false or fraudulent claim paid or

approved by the Government.  (3) The Defendants conspired to defraud the Government by

getting a false or fraudulent claim allowed or paid.  (4) Defendants knowingly bought or received

as a pledge of an obligation of debt public property from an officer or employee of the

Government or a member of the Armed Forces who lawfully may not sell or pledge the property.

(5) The Defendants knowingly made, used or caused to be made or used a false record or

statement to conceal, void, or decrease and obligation to pay or transmit money or property to the

government.  It should be noted the numbers (1), (2), (3), (4), (5) follow the numbering of the

statute at the writing of this, however there may be additional numbers (?) added. Until discovery

commences it can not be known what additional numbers may be added, if any.

All of this was done in Odessa, Ector County, Texas either by one (1) or both of the

Defendants herein.  Thus, each falls under the False Claims Act which is known as 31 U.S.C. §

3729 et al.

**Parties**

5.     The parties to this action are the UNITED STATES OF AMERICA, and LARRY

MILLER, an individual who resides in Midland, Midland County, Texas.

6.     The UNITED STATES OF AMERICA may be served by serving the following, to wit:

    a.    Eric H. Holder, Jr.
        United States Attorney General's Office
        United States Department of Justice, Civil Division
        950 Pennsylvania Avenue
        Washington D.C.  20530-0001

    b.    John E. Murphy
        First Assistant United States Attorney
        United States Attorney's Office
        601 N.W. Loop 410, Suite 600
        San Antonio, Texas  78216

    c.    John Klassen, Chief
        United States Attorney's Office
        400 W. Illinois
        Midland, Texas 79701

7.     The Defendant, MEDICAL CENTER HOSPITAL DISTRICT is a political subdivision of the State of Texas and has the political boundaries of Ector County, Texas.  Service of Citation may be served upon the Chief Executive officer.

8.     The Defendant, COMPLETE RX LIMITED, INC., is a Corporation entitled to do business in the State of Texas.  It is not known at the time of the writing of this Complaint whether or not the Defendant, COMPLETE RX LIMITED, INC. was incorporated in the State of Texas or in some other state or some other foreign jurisdiction.  However, it has been doing business in Odessa, Ector County, Texas for several years.  Service of Citation may be had upon the Chief Executive officer.

## Facts

9.     LARRY MILLER, Plaintiff/Complainant herein is a Pharmacist entitled to do business in the State of Texas.  He is a male who resides in Midland, Midland County, Texas.  However, in the past he has worked for Defendant, MEDICAL CENTER HOSPITAL.

10.    LARRY MILLER became a Pharmacist in June 4, 1970. His license number is 18864 in the State of Texas. He is an active Pharmacist, and he is in good standing.

11.    LARRY MILLER graduated from Southwestern Oklahoma State University, State of Oklahoma. He has a Bachelor of Science Degree. He became a Pharmacist by the method of licensing through an exam.

12.    For several years LARRY MILLER owned and operated a pharmacy business in Big Spring, Howard County, Texas.

13.    LARRY MILLER became employed at MEDICAL CENTER HOSPITAL, Defendant on January 4, 1996 as a staff pharmacist. This was his first opportunity to work in a hospital pharmacy.

14.    At this time, LARRY MILLER is sixty two (62) years of age.

15.    After, he worked in the pharmacy of Medical Center Hospital he was asked if he would like to join Eric Pokky, a pharmacist, in the clinical department of the MEDICAL CENTER HOSPITAL. LARRY MILLER accepted this position.

16.    LARRY MILLER worked with Eric Pokky for over a year and was instructed about clinical pharmacy work.

17.    After, this year he was again asked to change positions and work in the indigent area of MEDICAL CENTER HOSPITAL. This was in the out patient area. This was new and carried with it a greater responsibility.

18.    During this time, LARRY MILLER started a program, which would receive drugs for the MEDICAL CENTER HOSPITAL of Ector County, Texas for indigent patients. This was a challenge and a step up the business "ladder." When LARRY MILLER started the indigent

4

pharmacy care program there were only two (2) individuals in the department, Kelly Cabrerra and himself. It became successful. Several more workers were added.

19.     It became so successful that LARRY MILLER was asked to put on a presentation in Washington D.C. At this time, because of the work of LARRY MILLER, three hundred (300) hospitals across the United States have set up programs based upon the program Kelly Cabrerra and LARRY MILLER started.

20.     The program is simplistic in the way it works as follows: There is a method of obtaining free drugs for indigent people.

21.     At the time LARRY MILLER had left the hospital it had grown to four (4) individuals who did the claims for free drugs on the indigent patients. At that time and by the work of LARRY MILLER he had received from the pharmaceutical companies over thirty (30) million dollars ($30, 000,000.00) worth of free drugs. This saved the taxpayers of Ector County, Texas and the United States from having to pay for these indigent patients drugs. A tremendous savings had been conceived by LARRY MILLER.

22.     This program was praised by the pharmacy directors as well as the Administration of Medical Center Hospital.

23.     It was common for LARRY MILLER to order large qualities of various drugs. An example of the drugs were as follows:

      a.     PRO-AIR INHALER-ASTHMA INHALER

      b.     FLONASE NASAL SPRAY- ALLERGY NASAL SPRAY

      c.     NASONEX NASAL SPRAY- ALLERGY NASAL SPRAY

      d.     YAZ AND YASMIN-BIRTH CONTROL PILLS

      e.     PROTONIX-GASTRIC REFLUX MEDICATION

f.      NEXIUM-GASTRIC REFLUX MEDICATION

g.      GLUCOTROL-DIABETES MEDICATION

h.      GLUCOPHAGE-DIABETES MEDICATION

i.      GLUCOVANCE-DIABETES MEDICATION

j.      GLUCATROL- DIABETES MEDICATION

h.      MICRONASE-DIABETES MEDICATION

i.      Z-PAK-ANTIOBIOTIC

j.      CLEOCIN-ANTIBIOTIC

k.      INSULIN-DIABETES MEDICATION

l.      NORVASC-BLOOD PRESSURE MEDICATION

m.      DIOVAN-BLOOD PRESSURE MEDICATION

n.      ZOLOFT-DEPRESSION MEDICATION

o.      DETROL LA-BLADDER MEDICATION

p.      ALBUTEROL SOLUTION-ASTHMA MEDICATION

q.      IPRATROPIUM SOLUTION-ASTHMA MEDICATION

r.      COMBIVENT-ASTHMA MEDICATION

s.      TUSSIONEX-COUGH MEDICATION

t.      XANAX-MILD SEDATIVE

u.      HYDROCODONE WITH APAP-PAIN MEDICATION

v.      PROPOXEPHENE WITH APAP-PAIN MEDICATION

The prices changed every quarter under the 340(b) pricing, so LARRY MILLER always tried to

order a years supply of drugs that were used in large quantities and could be bought for a penny

on the dollar or less.  There were other drugs that were ordered over a several years period, but

6

these are the most common of the ones that were used in large quantities. One reason for the large usage of most drugs was due to the fact that there was dispensed a ninety (90) days supply of medication based on 95% of the prescription rate.

24.     During the time period LARRY MILLER was operating the outpatient pharmacy for indigent care. He received evaluations which were always excellent and received the highest pay raise possible.

25.     In April 2008, the MEDICAL CENTER HOSPITAL contracted with a company out of Houston, Texas to operate the pharmacy. MEDICAL CENTER HOSPITAL contracted with the Defendant, COMPLETE RX INC. to run the pharmacy where LARRY MILLER was working. Immediately, COMPLETE RX INC. wanted all the pharmacists to be its employees. Frankly, the employees at MEDICAL CENTER HOSPITAL rebelled that this was unfair because it gave the right of firing and changing the records of the various areas in MEDICAL CENTER HOSPITAL. This was not acceptable with the employees of MEDICAL CENTER HOSPITAL.

26.     What COMPLETE RX LIMITED, INC. wanted to do was to get rid of as many of the pharmacists as possible that were working for MEDICAL CENTER HOSPITAL. They decided to bring their own people into the environment that LARRY MILLER and MEDICAL CENTER HOSPITAL were working. This was to cut expenses.

27.     In an eight (8) month period the Defendant, COMPLETE RX LIMITED INC., managed to either fire and/or run off nine (9) pharmacists, which included LARRY MILLER.

28.     The person in charge for COMPLETE RX LIMITED INC., at MEDICAL CENTER HOSPITAL was Judy Ramey, a pharmacist herself.

29.     The individuals in the outpatient pharmacy then worked for Medical Center Hospital, LARRY MILLER had very little contact with Judy Ramey at first.

30.     However, when LARRY MILLER began to question what was happening in the pharmacy, Judy Ramey became more and more abserved in the pharmacy setting.

31.     It is customary for the pharmacy areas, where the different medicines are kept, to be kept under lock and key.  LARRY MILLER insisted this be done.

32.     In the beginning there were only three (3) people who had keys to the pharmacy.  They were:

      a.     Judy Ramey:   employee of Complete RX Limited, Inc.

      b.     LARRY MILLER

      c.     Another person

33.     After COMPLETE RX LIMITED INC. had keys to the pharmacy, LARRY MILLER would lock up at night, only to find the next morning that the door was left open and notes that drugs had been taken and sometimes no notes were left.  The pharmacy was under the supposed control of LARRY MILLER.  Not reviewing what drugs that were taken was never mentioned in the notes and the drugs were never replaced.

34.     This was totally improper and illegal because these drugs were for use only for outpatient basis /indigent care, but they were being taken to the inpatient pharmacy and used there, or sent to persons who were not eligible to receive these.

35.     These drugs were being taken illegally and against the Federal law.  These drugs were taken to reduce the cost of the drugs for the inpatient pharmacy.  The drugs were billed to the Federal Government/ Medicare/Medicaid which is what took place.

36.     It became necessary for Judy Ramey/ Medical Center Hospital/ COMPLETE RX INC. to have LARRY MILLER removed because he was questioning this illegal practice.  Everyday when he questioned it, he was ignored.  No action was taken.  It was not known what drugs were

when he questioned it, he was ignored. No action was taken. It was not known what drugs were taken by whom, when they were taken, or why they were taken. The key to this area was under control of Judy Ramey.

37.    LARRY MILLER'S license was on the line and no one should have been entering the pharmacy after it was closed except those individuals such as LARRY MILLER.

38.    Based on Judy Ramey's evaluation of LARRY MILLER, he did not receive an excellent score and the four (4) percent increase in salary was not given to him that was normally done previously every time he had been evaluated.

39.    However, Judy Ramey did say in her evaluation that LARRY MILLER kept impeccable records. This was true. LARRY MILLER kept records that were not even required to be kept.

40.    LARRY MILLER instituted another program called the 340B Program, which is basically a program to obtain certain drugs. This too was important for cost reduction and giving better service to the MEDICAL CENTER HOSPITAL patients.

41.    On March 11, 2009, LARRY MILLER was called to Harvey Hudspeth's office in Medical Center Hospital. Harvey Hudspeth is the Executive Director of Human Resources of Medical Center Hospital. Judy Ramey, Harry Hudspeth, Tony Ruiz and one (1) other male who worked for COMPLETE RX LIMITED INC. were there. It is assumed this conversation was recorded.

42.    LARRY MILLER was told that a serious accusation had been made about the outpatient pharmacy. No one accused LARRY MILLER at that time. Nevertheless, LARRY MILLER was being put on paid administrative leave until this accusation could be investigated. LARRY MILLER asked what the accusation was and Judy Ramey, Tony Ruiz, the other male and Harvey

Hudspeth would not tell him what the accusation was. However they did mention the subject of records.

43.     This was done for the purpose of destroying the reputation of LARRY MILLER. COMPLETE RX LIMITED INC and MEDICAL CENTER HOSPITAL had to remove LARRY MILLER.  He knew too much.

44.     No one, of those mentioned in the meeting on March 11, 2009 would say, who, when, where, what or why this accusation was brought up.  This was the first time that it was ever mentioned.

45.     Later on, LARRY MILLER was told that the DEA had been called to audit all the controlled substances.  There was nothing that was found incriminating LARRY MILLER.

46.     Since, LARRY MILLER was not present when the DEA came in, if it did, no one knows what records the DEA were shown or what the agency looked at.

47.     At no time has LARRY MILLER ever been reprimanded and/or disciplined or had his licenses revoked or fined.  LARRY MILLER could have been given a blood test.  He was not.

48.     On March 27, 2009, LARRY MILLER received a call at his home from Tony Ruiz and Harvey Hudspeth.  At that time, these men offered no explanation of any kind but told LARRY MILLER'S employment at MEDICAL CENTER HOSPITAL was terminated immediately.

49.     When LARRY MILLER asked for what reason, Tony Ruiz said, "Well, let's just say improper record keeping."

50.     At that time, LARRY MILLER, asked if he could turn in his only termination that he was quitting.  It was finally agreed that he could.  This was done under pressure.

51.     Subsequent to this, which was several weeks later, LARRY MILLER received a telephone call.  He did not recognize the voice that was speaking.  The voice advised that a copy

of the letter of the accusations was left on the copy machine in the inpatient pharmacy by Judy Ramey. This voice said they were sending me a copy of the letter. A copy of the letter is attached hereto and made apart hereof for all purposes, known as (Exhibit A)

52.    It became necessary for Judy Ramey to be sure that LARRY MILLER left the hospital and if possible to destroy his reputation which Judy Ramey attempted to do as well as COMPLETE RX LIMITED INC.

53.    Judy Ramey needed to get rid of LARRY MILLER in order for her organization to continue using those 340B drugs for inpatient use, which is a direct violation of Federal law. Other individuals may have been involved..

54.    There were certain documents that were left in the filing cabinet of LARRY MILLER that would substantiate what LARRY MILLER is telling in this writing of this "Qui-Tam" action. There also was a report that was given to the Chief Financial Officer on a monthly basis.

55.    It is believed all of this documentation may have been tampered with and may and/or may not exist any longer. There exists, or did exist, a tape/disc/video of people entering the pharmacy area.

56.    Based on the knowledge, comments and observations of LARRY MILLER, the drugs which were taken were used to charge the Federal Government (Medicare and Medicaid) for drugs which were obtained with out cost.

57.    An Employee of MEDICAL CENTER HOSPITAL, Julian Beseril, came to LARRY MILLER, and told him not to mention to the Federal authorities what has been set out in paragraphs numbered 8-55 above. For various violations occurring which Julius Beserel knew about. It was obvious from that conversation.

11

## Causes of Action

### COUNT ONE

58.     THE UNITED STATES/ LARRY MILLER realleges paragraphs 8-56 above as if fully set forth herein.

59.     MEDICAL CENTER HOSPITAL DISTRICT and /or COMPLETE RX LIMITED INC., knowingly submitted or caused the submission of false or fraudulent claims to Medicare/ United States government/Medicaid for payment using federal funds between at least January 1st, 2004, until the present time.

60.     It is estimated, although until discovery has been completed, there were over an estimated 100,000 false claims that were submitted to obtain federal funds.  This was a clear violation of 31 U.S.C 3729 et seq.

### COUNT TWO
Unjust Enrichment

61.     THE UNITED STATES/ LARRY MILLER realleges paragraphs 8-56 above as if fully set forth herein.

62.     MEDICAL CENTER HOSPITAL  DISTRICT and /or  COMPLETE RX LIMITED INC., has been unjustly enriched by its course of conduct as alleged in this complaint for at least the last 6 or 7 years.

### COUNT THREE
Conversion

63.     THE UNITED STATES/ LARRY MILLER realleges paragraphs 8-56 above as if fully set forth herein.

64.     As a result of MEDICAL CENTER HOSPITAL  DISTRICT and /or  COMPLETE RX LIMITED INC., conduct it was paid federal funds from the United States Treasury that were not

properly payable.

65.    At the time that such payments were made, the United States was not aware of the

MEDICAL CENTER HOSPITAL DISTRICT and /or COMPLETE RX LIMITED INC.,

wrongful conduct. Had the United States known that MEDICAL CENTER HOSPITAL

DISTRICT and /or COMPLETE RX LIMITED INC., was not entitled to receive such payments,

it would not have approved payment of such funds.

66.    The United States is entitled to recover those funds paid by mistake on account of

MEDICAL CENTER HOSPITAL DISTRICT and /or COMPLETE RX LIMITED INC.'s,

conduct between the time periods set out.

**Damages**

67.    On all accounts that if judgment is taken against the Defendants MEDICAL CENTER

HOSPITAL  DISTRICT and /or  COMPLETE RX LIMITED INC., in favor of the United States

for triple in its damages and for civil penalty and for each false claim submitted to the United

States government/Medicare/Medicaid and/or any other entity, and  for such false record or

statement made as allowed by law.

68.    Because discovery has not been completed, and has not started, the exact amount of

money cannot be set forth.  It is over the minimum jurisdiction of this Court.

**Miscellaneous**

69.    All claims and causes of action are brought by the Plaintiff and the undersigned attorney

with the intention to assert such with good reason and/or good cause.  In the even such

claims/causes of action are in conflict with the present law of the State of Texas or the United

States of America, then these claims/causes of action are not brought to harass or in a frivolous

manner.  The claims/causes of action and/or other legal contentions herein are warranted by

existing law and/or by a non-frivolous argument of the extension, modification and/or reversal of

existing law and/or the establishment of new law.

70.     The Relator is entitled to a fee to be established by the Court.

71.     The Relator is entitled to interest, prejudgment and post judgment interest.

72.     The Relator is entitled to attorney's fees and costs of court.

73.     This matter should be taken before a Federal Grand Jury.

74.     The Court should instruct the Defendants to not spoil/destroy/or obliterate any evidence.

                                    **Prayer**

75.     WHEREFORE PREMISES CONSIDERED, Complainant prays for judgment on the

following, to wit:

     a.     Damages as permitted by 31 U.S.C 3729 et seq.

     b.     Attorney fees

     c.     Interest according to pre/post judgment

     d.     Cost of Court

     e.     Jury trial

     f.     A fee paid to Relator

     g.     Such other relief as Relator/ United States is entitled.

     h.     The evidence herein such as computer programs is crucial.  The printouts are

        important for each month and year.  All programs should be seized at the earliest

        opportunity.

Respectfully submitted,

Gerald K. Fugit
fugitg@att.net
GERALD K. FUGIT, P.C.
Attorney at Law
412 North Texas Avenue
Odessa, Texas 79761-5198
Tel: (432) 332-1661
Fax: (432) 335-0003
State Bar No. 07501000
**ATTORNEY FOR COMPLAINANT**