

FILED

JUN 1 3 2011

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| RELATOR, LARRY MILLER, | § | |
|     (Plaintiffs/Complainants) | § | CAUSE NO.  MO-10-CV-042 |
| | § | |
| vs. | § | |
| | § | |
| MEDICAL CENTER HOSPITAL | § | |
| DISTRICT, d/b/a MEDICAL CENTER | § | |
| HOSPITAL and COMPLETE RX | § | |
| LIMITED, INC. | § | |
|     (Defendants) | § | |

## FIRST AMENDED ORIGINAL COMPLAINT

COMES NOW, UNITED STATES OF AMERICA, RELATOR, LARRY MILLER,

Plaintiffs/Complainants and complaining of MEDICAL CENTER HOSPITAL DISTRICT, d/b/a

MEDICAL CENTER and COMPLETE RX LIMITED, INC., here after called Defendants and

would show the Courts as follows, to wit:

    1.    This case was originally put under seal by the statutes of the UNITED

STATES OF AMERICA and through the Order of this Court.  This was to remain sealed until

such time as the UNITED STATES OF AMERICA  opted in or out of this cause of

action.  The UNITED STATES OF AMERICA at this time has opted out.

    2.    There are times when this cause of action(s) is called a Whistle-blowers Suit,

Lincoln Law, and/or Qui- Tam Enforcement Act.

### Jurisdiction/Venue

    3.    This action is brought under the provision of 31 U.S.C § 37 29 et al.

1

The matters contained herein all occurred within the political boundaries of Odessa, Ector County, Texas. This Court has jurisdiction over both of the Defendants named hereafter

4. Under the provisions of 31 U.S.C. § 3729, liability for certain acts, the Plaintiffs/Complainants states there have been violations by the Defendants, jointly and severally, by the following: (1) knowingly presenting, or cause to be presented, to an officer or an employee of the United States Government or a member of the Armed Forces of the United States a fraudulent claim for payment or approval. (2) Defendants knowingly made, used, or caused to be made or used, a false record or statement to yet false or fraudulent claim paid or approved by the Government. (3) The Defendants conspired to defraud the Government by getting a false or fraudulent claim allowed or paid. (4) Defendants knowingly bought or received as a pledge of an obligation of debt public property from an officer or employee of the Government or a member of the Armed Forces who lawfully may not sell or pledge the property. (5) The Defendants knowingly made, used or caused to be made or used a false record or statement to conceal, void, or decrease and obligation to pay or transmit money or property to the government. It should be noted the numbers (1), (2), (3), (4), (5) follow the numbering of the statute at the writing of this, however there may be additional numbers (?) added. Until discovery commences it can not be known what additional numbers may be added, if any.

All of this was done in Odessa, Ector County, Texas either by one (1) or both of the Defendants herein. Thus, each falls under the False Claims Act which is known as 31 U.S.C. § 3729 et al.

**Parties**

5. The parties to this action are the UNITED STATES OF AMERICA, and LARRY MILLER, an individual who resides in Midland, Midland County, Texas.

6.    The UNITED STATES OF AMERICA by and through its attorney has notified the Court that it desires to be kept informed of the progress of this case. The undersigned attorney has done so by sending to John Klassen in c/o Harold E. Brown, Jr., U.S. Attorney's Office, 601 NW Loop 410, Suite 600, San Antonio, Texas 78216-5597.

7.    The Defendant, MEDICAL CENTER HOSPITAL DISTRICT is a political subdivision of the State of Texas and has the political boundaries of Ector County, Texas. Service of Citation may be served upon the Chief Executive officer.

8.    The Defendant, COMPLETE RX LIMITED, INC., is a Corporation entitled to do business in the State of Texas. It is not known at the time of the writing of this Complaint whether or not the Defendant, COMPLETE RX LIMITED, INC. was incorporated in the State of Texas or in some other state or some other foreign jurisdiction. However, it has been doing business in Odessa, Ector County, Texas for several years. Service of Citation may be had upon the Chief Executive officer.

## Facts

9.    LARRY MILLER, Plaintiff/Complainant herein is a Pharmacist entitled to do business in the State of Texas. He is a male who resides in Midland, Midland County, Texas. However, in the past he has worked for Defendant, MEDICAL CENTER HOSPITAL.

10.    LARRY MILLER became a Pharmacist in June 4, 1970. His license number is 18864 in the State of Texas. He is an active Pharmacist, and he is in good standing.

11.    LARRY MILLER graduated from Southwestern Oklahoma State University, State of Oklahoma. He has a Bachelor of Science Degree. He became a Pharmacist by the method of licensing through an exam.

3

12.    For several years LARRY MILLER owned and operated a pharmacy business in Big Spring, Howard County, Texas.

13.    LARRY MILLER became employed at MEDICAL CENTER HOSPITAL, Defendant on January 4, 1996 as a staff pharmacist.  This was his first opportunity to work in a hospital pharmacy.

14.    At this time, LARRY MILLER is sixty two (62) years of age.

15.    After, he worked in the pharmacy of Medical Center Hospital he was asked if he would like to join Eric Pokky, a pharmacist, in the clinical department of the MEDICAL CENTER HOSPITAL.  LARRY MILLER accepted this position.

16.    LARRY MILLER worked with Eric Pokky for over a year and was instructed about clinical pharmacy work.

17.    After, this year he was again asked to change positions and work in the indigent area of MEDICAL CENTER HOSPITAL.  This was in the out patient area.  This was new and carried with it a greater responsibility.

18.    During this time, LARRY MILLER started a program, which would receive drugs for the MEDICAL CENTER HOSPITAL of Ector County, Texas for indigent patients.  This was a challenge and a step up the business "ladder."  When LARRY MILLER started the indigent pharmacy care program there were only two (2) individuals in the department, Kelly Cabrerra and himself.  It became successful.  Several more workers were added.

19.    It became so successful that LARRY MILLER was asked to put on a presentation in Washington D.C.  At this time, because of the work of LARRY MILLER, three hundred (300) hospitals across the United States have set up programs based upon the program Kelly Cabrerra and LARRY MILLER started.

4

20.    The program is simplistic in the way it works as follows:  There is a method of obtaining free drugs for indigent people.

21.    At the time LARRY MILLER had left the hospital it had grown to four (4) individuals who did the claims for free drugs on the indigent patients.  At that time and by the work of LARRY MILLER he had received from the pharmaceutical companies over thirty (30) million dollars ($30, 000,000.00) worth of free drugs.  This saved the taxpayers of Ector County, Texas and the United States from having to pay for these indigent patients drugs.  A tremendous savings had been conceived by LARRY MILLER.

22.    This program was praised by the pharmacy directors as well as the Administration of Medical Center Hospital.

23.    It was common for LARRY MILLER to order large qualities of various drugs. An example of the drugs were as follows:

        a.    PRO-AIR INHALER-ASTHMA INHALER

        b.    FLONASE NASAL SPRAY- ALLERGY NASAL SPRAY

        c.    NASONEX NASAL SPRAY- ALLERGY NASAL SPRAY

        d.    YAZ AND YASMIN-BIRTH CONTROL PILLS

        e.    PROTONIX-GASTRIC REFLUX MEDICATION

        f.    NEXIUM-GASTRIC REFLUX MEDICATION

        g.    GLUCOTROL-DIABETES MEDICATION

        h.    GLUCOPHAGE-DIABETES MEDICATION

        i.    GLUCOVANCE-DIABETES MEDICATION

        j.    GLUCATROL- DIABETES MEDICATION

        k.    MICRONASE-DIABETES MEDICATION

5

l.    Z-PAK-ANTIBIOTIC

m.    CLEOCIN-ANTIBIOTIC

n.    INSULIN-DIABETES MEDICATION

o.    NORVASC-BLOOD PRESSURE MEDICATION

p.    DIOVAN-BLOOD PRESSURE MEDICATION

q.    ZOLOFT-DEPRESSION MEDICATION

r.    DETROL LA-BLADDER MEDICATION

s.    ALBUTEROL SOLUTION-ASTHMA MEDICATION

t.    IPRATROPIUM SOLUTION-ASTHMA MEDICATION

u.    COMBIVENT-ASTHMA MEDICATION

v.    TUSSIONEX-COUGH MEDICATION

w.    XANAX-MILD SEDATIVE

x.    HYDROCODONE WITH APAP-PAIN MEDICATION

y.    PROPOXEPHENE WITH APAP-PAIN MEDICATION

The prices changed every quarter under the 340(b) pricing, so LARRY MILLER always tried to order a years supply of drugs that were used in large quantities and could be bought for a penny on the dollar or less. There were other drugs that were ordered over a several years period, but these are the most common of the ones that were used in large quantities. One reason for the large usage of most drugs was due to the fact that there was dispensed a ninety (90) days supply of medication based on 95% of the prescription rate.

24.    During the time period LARRY MILLER was operating the outpatient pharmacy for indigent care. He received evaluations which were always excellent and received the highest pay raise possible.

6

25.    In April 2008, the MEDICAL CENTER HOSPITAL contracted with a company out of Houston, Texas to operate the pharmacy. MEDICAL CENTER HOSPITAL contracted with the Defendant, COMPLETE RX INC. to run the pharmacy where LARRY MILLER was working. Immediately, COMPLETE RX INC. wanted all the pharmacists to be its employees. Frankly, the employees at MEDICAL CENTER HOSPITAL rebelled that this was unfair because it gave the right of firing and changing the records of the various areas in MEDICAL CENTER HOSPITAL. This was not acceptable with the employees of MEDICAL CENTER HOSPITAL.

26.    What COMPLETE RX LIMITED, INC. wanted to do was to get rid of as many of the pharmacists as possible that were working for MEDICAL CENTER HOSPITAL. They decided to bring their own people into the environment that LARRY MILLER and MEDICAL CENTER HOSPITAL were working. This was to cut expenses.

27.    In an eight (8) month period the Defendant, COMPLETE RX LIMITED INC., managed to either fire and/or run off nine (9) pharmacists, which included LARRY MILLER.

28.    The person in charge for COMPLETE RX LIMITED INC., at MEDICAL CENTER HOSPITAL was Judy Ramey, a pharmacist herself.

29.    The individuals in the outpatient pharmacy then worked for Medical Center Hospital, LARRY MILLER had very little contact with Judy Ramey at first.

30.    However, when LARRY MILLER began to question what was happening in the pharmacy, Judy Ramey became more and more observed in the pharmacy setting.

31.    The purpose of the 340b program was to make available certain drugs at extremely low Costs and at times with no costs to the following, to wit:

       1.    the indigent

2.    employees of Medical Center Hospital and/or the employees

family members

3.    retired individuals also known as "retirees"

32.    These drugs were made readily available to the groups mentioned above. However, it became necessary that a Doctor's prescription was going to be needed. It could not be just any doctor but one that had staff privileges, a relationship with the hospital and/or a license that would allow the physician to work for Medical Center Hospital.

33.    The out-patient pharmacy was to service the above mentioned individuals and only these individuals listed in one (1) through three (3) above.

34.    At the time he was present, and the one in charge of the out-patient pharmacy, there were three (3) sites where the 340b program was administered for the indigent, employees and retires. These three (3) places, all in Ector County, Texas were as follows, to wit:

A.    Out – patient office

B.    The Wheatley building-located across the street from Medical Center Hospital

C.    The South Side Family Medical Center which is approximately two (2) miles from Medical Center Hospital, Defendant."

35.    During the time he was in charge of the out-patient pharmacy of Medical Center Hospital, there were three people that were given a swipe card and a key. This was the only method of entering the building when it was locked after hours. These individuals were as follows, to wit:

A.    Myself, Larry Miller

B.    Judy Ramey, an employee of Complete RX

8

    C.    Wally Harris, now deceased

Each one of these individuals had a key to the main section of the out-patient pharmacy

and the swipe card that would allow them to get in through the front door. There was a

possibility, although it is not known at this time, that the security of Medical Center

Hospital also had a key/swipe card. There were two entrances."

    36.    Operating hours for the out-patient pharmacy were from eight a.m. (8:00)

to five p.m. (5:00) Monday through Friday. In order to get into the out-patient

pharmacy after hours there had to be access by key and swipe card. From the outside

the swipe card had to be used. On weekends and holidays the out-patient pharmacy

was closed."

    37.    It has now been determined from a deposition from another case that Judy

Ramey, the individual that was the representative of Complete Rx, Defendant, gave her

key and her swipe card to third parties evidently on numerous occasions. Judy Ramey

also admitted to going in herself after hours.

    38.    There would be occasions that he would arrive to begin his shift at eight

a.m. (8:00) and would find that there would be left on the counter of the out-patient

pharmacy a note that had not been signed nor dated explaining that medications had

been taken from the out-patient pharmacy, but it was never given any of the amounts or

explanation. At other times there was evidence of someone entering the out-patient

pharmacy after hours and not leaving any explanation. On other occasions the door

would be left open, where the key had to be used, and he would find this upon entering the out-pharmacy on my shift at eight a.m. (8:00). This issue concerning the door being left open and medications being taken without approval after hours did not start occurring until Complete RX was contracted to work for Medical Center Hospital."

39.    There are or were two types of pharmacies in Medical Center Hospital and they are as followed, to wit:

        A.    In-patient pharmacy

        B.    Out-patient pharmacy

40.    Larry Miller was in charge of the out-patient pharmacy.

41.    The 340b program worked in the manner that there would be ordered specific medications from retailers for pennies on the dollar. The specific medicines listed, but not limited to, are found in the original Complaint paragraph Arabic 23, a-v. This program saved the Medical Center Hospital millions of dollars.

42.    On several occasions Larry Miller, talked to the administration of Medical Center Hospital, Defendant, to let them know that there were problems concerning people coming into the pharmacy after hours.  He had no idea what exactly had been taken.

43.    It should be noted that the depositions for Medical Center Hospital, Defendant, and Complete Rx, Defendant, in the Complaint filed in this court, have not been taken at this time.

44.    As the court knows there has not been an answer filed by either Defendant but Medical Center Hospital has filed a 9b motion under the provision of *Federal Rules of Civil Procedure*.

45.    Although depositions and discovery have not been completed it cannot be known the exact amount of savings nor the medicines that had been taken after hours.

46.    It is estimated the affiant herein, that at least Medical Center Hospital or some third party took the medicines and were using them in the in-patient pharmacy. Notes were left in the out-patient pharmacy that there was a need for medicines in the hospital/ and in the in-patient pharmacy.  It was his conclusion that the medicines taken were used in the hospital.

47.    There after Medical Center Hospital, Defendant, would bill Medicaid and/or Medicare of the United States which was granting money to the State of Texas to perform such actions.

48.    It is correct the out-patient pharmacy has been closed since December 2010. It is not known but it is assumed that the inventory left was in excess of thousands and thousands of dollars, was placed into the in-patient pharmacy and the United States of America was being billed for these medicines when they were purchased for use for the patient.

49.    Another fraudulent act that was being done by Medical Center Hospital and Complete Rx was the fact that Doctors were sending in prescriptions when neither

11

the Doctor nor the patient had anything to do with the out-patient/in-patient pharmacy.
This caused a great deal of problems and Larry Miller did advise administration of
these problems. In short the Doctors from other states were not authorized to use the
facilities of Medical Center Hospital.

50.    Until discovery is complete, it cannot be known the amount of billings for
Medicare/Medicaid billing but it is expected to be not thousands of dollars but in the
millions. Drugs that were used by Medical Center Hospital were billed to the insurance
company and/or Medicare/Medicaid

51.    Unless destroyed and/or deleted and/or purged the claims set forth cannot
be substantiated until discovery has been finished.

52.    These activities were being done on the premises by the Defendants, after
hours, and for money, which benefited both Defendants.

It is customary for the pharmacy areas, where the different medicines are kept, to be kept
under lock and key. LARRY MILLER insisted this be done.

53.    In the beginning there were only three (3) people who had keys to the pharmacy.
They were:

a.    Judy Ramey:   employee of Complete RX Limited, Inc.

b.    LARRY MILLER

c.    Another person

54.    After COMPLETE RX LIMITED INC. had keys to the pharmacy, LARRY MILLER would lock up at night, only to find the next morning that the door was left open and notes that drugs had been taken and sometimes no notes were left. The pharmacy was under the supposed control of LARRY MILLER. Not reviewing what drugs that were taken was never mentioned in the notes and the drugs were never replaced.

55.    This was totally improper and illegal because these drugs were for use only for outpatient basis /indigent care, but they were being taken to the inpatient pharmacy and used there, or sent to persons who were not eligible to receive these.

56.    These drugs were being taken illegally and against the Federal law. These drugs were taken to reduce the cost of the drugs for the inpatient pharmacy. The drugs were billed to the Federal Government/ Medicare/Medicaid which is what took place.

57.    It became necessary for Judy Ramey/ Medical Center Hospital/ COMPLETE RX INC. to have LARRY MILLER removed because he was questioning this illegal practice. Everyday when he questioned it, he was ignored. No action was taken. It was not known what drugs were taken by whom, when they were taken, or why they were taken. The key to this area was under control of Judy Ramey.

58.    LARRY MILLER'S license was on the line and no one should have been entering the pharmacy after it was closed except those individuals such as LARRY MILLER.

59.    At the time he was put on Administrative leave it was done in such a way I could not retrieve any of the documents that he knew to be in the computer. He was called to the office of the Administration whereby he was told that he was put on Administrative leave. This occurred on March 11, 2009. On or before the 27th day of March 2009, he was called by a member of the Administration of Medical Center Hospital and was told that he was terminated.

13

He was not able to retrieve any of the documents that he knew that were present in the confined in the computer and the room where I had worked- out patient clinic.

60.    Based on Judy Ramey's evaluation of LARRY MILLER, he did not receive an excellent score and the four (4) percent increase in salary was not given to him that was normally done previously every time he had been evaluated.

61.    However, Judy Ramey did say in her evaluation that LARRY MILLER kept impeccable records. This was true. LARRY MILLER kept records that were not even required to be kept.

62.    LARRY MILLER instituted another program called the 340b Program, which was basically a program to obtain certain drugs. This too was important for cost reduction and giving better service to the MEDICAL CENTER HOSPITAL patients.

63.    On March 11, 2009, LARRY MILLER was called to Harvey Hudspeth's office in Medical Center Hospital. Harvey Hudspeth is the Executive Director of Human Resources of Medical Center Hospital. Judy Ramey, Harry Hudspeth, Tony Ruiz and one (1) other male who worked for COMPLETE RX LIMITED INC. were there. It is assumed this conversation was recorded.

64.    LARRY MILLER was told that a serious accusation had been made about the outpatient pharmacy. No one accused LARRY MILLER at that time. Nevertheless, LARRY MILLER was being put on paid administrative leave until this accusation could be investigated. LARRY MILLER asked what the accusation was and Judy Ramey, Tony Ruiz, the other male and Harvey Hudspeth would not tell him what the accusation was. However they did mention the subject of records.

65.     This was done for the purpose of destroying the reputation of LARRY MILLER.

COMPLETE RX LIMITED INC and MEDICAL CENTER HOSPITAL had to remove LARRY

MILLER. He knew too much.

66.     No one, of those mentioned in the meeting on March 11, 2009 would say, who,

when, where, what or why this accusation was brought up. This was the first time that it was

ever mentioned.

67.     Later on, LARRY MILLER was told that the DEA had been called to audit all the

controlled substances. There was nothing that was found incriminating LARRY MILLER.

68.     Since, LARRY MILLER was not present when the DEA came in, if it did, no one

knows what records the DEA were shown or what the agency looked at.

69.     At no time has LARRY MILLER ever been reprimanded and/or disciplined or

had his licenses revoked or fined. LARRY MILLER could have been given a blood test. He

was not.

70.     On March 27, 2009, LARRY MILLER received a call at his home from Tony

Ruiz and Harvey Hudspeth. At that time, these men offered no explanation of any kind but told

LARRY MILLER'S employment at MEDICAL CENTER HOSPITAL was terminated

immediately.

71.     When LARRY MILLER asked for what reason, Tony Ruiz said, "Well, let's just

say improper record keeping."

72.     At that time, LARRY MILLER, asked if he could turn in his only termination that

he was quitting. It was finally agreed that he could. This was done under pressure.

73.     Subsequent to this, which was several weeks later, LARRY MILLER received a

telephone call. He did not recognize the voice that was speaking. The voice advised that a copy

of the letter of the accusations was left on the copy machine in the inpatient pharmacy by Judy Ramey. This voice said they were sending me a copy of the letter. A copy of the letter is attached hereto and made apart hereof for all purposes, known as (Exhibit A)

74.    It became necessary for Judy Ramey to be sure that LARRY MILLER left the hospital and if possible to destroy his reputation which Judy Ramey attempted to do as well as COMPLETE RX LIMITED INC.

75.    Judy Ramey needed to get rid of LARRY MILLER in order for her organization to continue using those 340b drugs for inpatient use, which is a direct violation of Federal law. Other individuals may have been involved.

76.    There were certain documents that were left in the filing cabinet of LARRY MILLER that would substantiate what LARRY MILLER is telling in this writing of this "Qui-Tam" action. There also was a report that was given to the Chief Financial Officer on a monthly basis.

77.    It is believed all of this documentation may have been tampered with and may and/or may not exist any longer. There exists, or did exist, a tape/disc/video of people entering the pharmacy area.

78.    Based on the knowledge, comments and observations of LARRY MILLER, the drugs which were taken were used to charge the Federal Government (Medicare and Medicaid) for drugs which were obtained with out cost.

79.    An Employee of MEDICAL CENTER HOSPITAL, Julian Beseril, came to LARRY MILLER, and told him not to mention to the Federal authorities what has been set out

in paragraphs numbered 8-55 above. For various violations occurring which Julius Beserel knew

about. It was obvious from that conversation.

80.    THE UNITED STATES/ LARRY MILLER realleges paragraphs 8-56 above as if

fully set forth herein.

81.    MEDICAL CENTER HOSPITAL DISTRICT and /or COMPLETE RX

LIMITED INC., knowingly submitted or caused the submission of false or fraudulent claims to

Medicare/ United States government/Medicaid for payment using federal funds between at least

January 1st, 2004, until the present time.

82.    It is estimated, although until discovery has been completed, there were over an

estimated 100,000 false claims that were submitted to obtain federal funds. This was a

clear violation of 31 U.S.C 3729 et seq.

**Causes of Action**

**COUNT ONE**

83.    MEDICAL CENTER HOSPITAL DISTRICT and /or COMPLETE RX

LIMITED INC., has been unjustly enriched by violation of 31 U.S.C 3729 et seq  by its course of

conduct as alleged in this complaint for at least the last 6 or 7 years.

84.    As a result of MEDICAL CENTER HOSPITAL DISTRICT and /or COMPLETE

RX LIMITED INC., conduct it was paid Federal funds from the United States Treasury that were

not properly payable.

85.    At the time that such payments were made, the United States was not aware of the

MEDICAL CENTER HOSPITAL DISTRICT and /or COMPLETE RX LIMITED INC.,

wrongful conduct. Had the United States known that MEDICAL CENTER HOSPITAL

DISTRICT and /or COMPLETE RX LIMITED INC., was not entitled to receive such payments,

it would not have approved payment of such funds.

17

86.    The United States is entitled to recover those funds paid by mistake on account of MEDICAL CENTER HOSPITAL DISTRICT and /or COMPLETE RX LIMITED INC.'s, conduct between the time periods set out.

87.    It should be noted that in another case, *Larry R. Miller vs. Ector County Hospital District, Complete RX Inc., Judy Ramey, John Doe and Jane Doe, Unknown at this time*, Cause No: B-128,999, In the 161st Judicial District, another lawsuit has been filed prior to this *qui tam*. There was filed on April 7, 2011 certain Request for Production (Second Set) against the Defendant, Medical Center Hospital. Several of the request deal directly with "who" and "when" persons were entering the out-patient pharmacy after hours. When such request has been answered there will be more positive identification of who was going into the out-patient pharmacy after hours. The Request for Production is attached hereto and made apart hereof.

88.    In the Complaint as well as the proposed Complainant's First Amended Original Complaint, it is obvious the Plaintiff/Complainant did not have time to gather all or part of the evidence from the records/data/computers.

## Damages

89.    On all accounts that if judgment is taken against the Defendants MEDICAL CENTER HOSPITAL DISTRICT and /or COMPLETE RX LIMITED INC., in favor of the United States for triple in its damages and for civil penalty and for each false claim submitted to the United States government/Medicare/Medicaid and/or any other entity, and for such false record or statement made as allowed by law.

90.    Because discovery has not been completed, and has not started, the exact amount of money cannot be set forth. It is over the minimum jurisdiction of this Court.

**Miscellaneous**

91.    All claims and causes of action are brought by the Plaintiff and the undersigned attorney with the intention to assert such with good reason and/or good cause. In the even such claims/causes of action are in conflict with the present law of the State of Texas or the United States of America, then these claims/causes of action are not brought to harass or in a frivolous manner. The claims/causes of action and/or other legal contentions herein are warranted by existing law and/or by a non-frivolous argument of the extension, modification, and/or reversal of existing law and/or the establishment of new law.

92.    The Relator is entitled to a fee to be established by the Court.

93.    The Relator is entitled to interest, prejudgment and post judgment interest.

94.    The Relator is entitled to attorney's fees and costs of court.

95.    This matter should be taken before a Federal Grand Jury.

96.    The Court should instruct the Defendants to not spoil/destroy/or obliterate any evidence.

**Prayer**

97.    WHEREFORE PREMISES CONSIDERED, Complainant prays for judgment on the following, to wit:

    a.    Damages as permitted by 31 U.S.C 3729 et seq.

    b.    Attorney fees

    c.    Interest according to pre/post judgment

    d.    Cost of Court

    e.    Jury trial

f.   A fee paid to Relator

g.   Such other relief as Relator/ United States is entitled.

h.   The evidence herein such as computer programs is crucial.  The

printouts are important for each month and year.  All programs

should be seized at the earliest opportunity.

Respectfully submitted,

Gerald K. Fugit
fugitg@att.net
**GERALD K. FUGIT, P.C.**
Attorney at Law
412 North Texas Avenue
Odessa, Texas 79761-5198
Tel: (432) 332-1661
Fax: (432) 335-0003
State Bar No. 07501000
**ATTORNEY FOR COMPLAINANT**

## CERTIFCATE OF CONFERENCE

An oral conference was done with Denis Dennis on or about 3rd/4th of May 2011 and a
letter was sent to Miles Nelson on May 5, 2011.  Denis Dennis indicated he did not have
any objection.  Gerald K. Fugit has not received any communications from Miles R.
Nelson, Stacey Trotter, and/or Ronald Griffin.

Gerald K. Fugit

State of TEXAS         §
                       §
County of ECTOR    §

On this 10 day of  May, 2011 before me, the undersigned notary public, personally
appeared Gerald K. Fugit, known to be the person whose name is subscribed to the
within instrument and acknowledged that he executed the same for the purpose therein
contained.

Notary Public for the State of Texas
and the County of Ector

21

## CERTIFICATE OF SERVICE

I do hereby certify that on this 10th day of May 2011, I electronically filed the foregoing document with the clerk of the Court using the CM/ECF which will send notification of such filing to the following, to wit:

_Gerald Fugit_

Gerald K. Fugit

John Klassen, Chief - Sent via U.S Mail
United States Attorney's Office
400 W. Illinois
Midland, Texas 79701

Harold E. Brown, Jr.
U.S. Attorney's Office
601 NW Loop 410, Suite 600
San Antonio, Texas  78216-5597
**Attorney for Plaintiff United States of America**

Denis Dennis
Rush, Kelly, Morgan, Dennis, Corzine & Hansen, P.C.
Attorney at Law
4001 East 42nd Street
Odessa, Texas  79762
**Attorney for Complete RX Limited, Inc.**

Shafer, Davis, O'Leary & Corzine, & Hansen, P.C.
Miles R. Nelson
Stacey Trotter
Ronald Griffin
P.O. drawer 1552
Odessa, Texas 79760-1552
**Attorney's for Ector County Hospital District
d/b/a Medical Center Hospital**

Larry R. Miller –Sent via U.S. Postal Service

22