UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| LARRY R. MILLER | § |
| | § CAUSE NO. MO-10-CV-042 |
| (Plaintiff) | § |
| | § |
| | § |
| vs. | § |
| | § |
| MEDICAL CENTER HOSPITAL, | § |
| DISTRICT, d/b/a MEDICAL | § |
| CENTER HOSPITAL, and COMPLETE | § |
| RX LIMITED, INC. | § |
| (Defendant) | |

## AFFIDAVIT OF LARRY MILLER

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF ECTOR | § |

BEFORE ME, the undersigned authority, personally appeared Larry Miller and who after have been duly sworn made the following statement, to wit:

"My name is Larry Miller. I have not been convicted of a felony in this state or in any other state. I am over the age of eighteen (18). I live in Midland, County, Midland Texas. I am capable and competent to give this affidavit. The matters set forth herein are true and correct and given under my own personal knowledge."

"I am a licensed pharmacist under the laws of the State of Texas. There has been filed a Complaint, Cause No. MO-CV-042-HLH, styled *United States of America, Realtor, Larry Miller v. Medical Center Hospital District, d/b/a Medical Center Hospital, and Complete RX Limited, Inc.*"

"I have been a pharmacist since June 4, 1970. I have a Bachelors degree from Southwestern Oklahoma State University, which is located in the State of Oklahoma."

"I worked for Medical Center Hospital, Defendant, beginning in the year 1996. After being employed by Medical Center Hospital, one of the Defendants herein, I was in charge of the out-patient pharmacy located on the premises of Medical Center Hospital. This is a different section than the in-patient pharmacy."

"During the time that I was in charge of the out-patient pharmacy, I formalized and applied for what is commonly known as a 340b program with pharmaceutical manufacturers within the United States. I initiated the 340b program"

"The purpose of the 340b program was to make available certain drugs at extremely low costs and at times with no costs to the following, to wit:

1. the indigent

2. employees of Medical Center Hospital and/or the employees family members

3. retired individuals also known as "retirees "

"These drugs were made readily available to the groups mentioned above. However, it became necessary that a Doctor's prescription was going to be needed. It could not be just any doctor but one that had staff privileges, a relationship with the hospital and/or a license that would allow the physician to work for Medical Center Hospital. "

"The out-patient pharmacy was to service the above mentioned individuals and only these individuals listed in one (1) through three (3) above."

"At the time I was present, and the one in charge of the out-patient pharmacy, there were three sites where the 340b program was administered for the indigent, employees and retirees. These three places all in Ector County were as follows, to wit:

A. Out-patient office

B. The Wheatley building-located across the street from Medical Center Hospital



  C. The South Side Family Medical Center which is approximately two (2) miles from Medical Center Hospital, Defendant."

"During the time I was in charge of the out-patient pharmacy of Medical Center Hospital, there were three people that were given a swipe card and a key. This was the only method of entering the building when it was locked after hours. These individuals were as follows, to wit:

A. Myself, Larry Miller

B. Judy Ramey, an employee of Complete RX

C. Wally Harris, now deceased

Each one of these individuals had a key to the main section of the out-patient pharmacy and the swipe card that would allow them to get in through the front door. There was a possibility; although it is not known at this time, that the security of Medical Center Hospital also had a key/swipe card. There were two entrances."

"Operating hours for the out-patient pharmacy were from eight a.m. (8:00) to five p.m. (5:00) Monday through Friday. In order to get into the out-patient pharmacy after hours there had to be access by key and swipe card. From the outside the swipe card had to be used. On weekends and holidays the out-patient pharmacy was closed."

"It has now been determined from a deposition from another case that Judy Ramey, the individual that was the representative of Complete Rx, Defendant, gave her key and her swipe card to third parties evidently on numerous occasions. Judy Ramey also admitted to going in herself after hours."

"There would be occasions that I would arrive to begin my shift at eight a.m. (8:00) and would find that there would be left on the counter of the out-patient pharmacy a note that had not been signed nor dated explaining that medications had been taken from the out-patient pharmacy, but it was never given any of the amounts or explanation. At other times there was evidence of someone entering the out-patient pharmacy after hours and not leaving any explanation. On other occasions the door would be left open, where the key had to be used, and I would find this upon entering the out-pharmacy on my shift at eight a.m. (8:00). This issue concerning the door being left open and medications

being taken without approval after hours did not start occurring until Complete RX was contracted to work for Medical Center Hospital."

"There are or were two types of pharmacies in Medical Center Hospital and they are as followed, to wit:

1. In-patient pharmacy
2. Out-patient pharmacy"

"Larry Miller was in charge of the out-patient pharmacy."

"The 340b program worked in the manner that there would be ordered specific medications from retailers for pennies on the dollar. The specific medicines listed, but not limited to, are found in the original Complaint paragraph Arabic 23, a-v. This program saved the County of Ector and Medical Center Hospital millions of dollars."

"On several occasions I, Larry Miller, talked to the administration of Medical Center Hospital, Defendant, to let them know that there were problems concerning people coming into the pharmacy after hours. I had no idea what exactly had been taken."

"It should be noted that the depositions for Medical Center Hospital, Defendant, and Complete Rx, Defendant, in the Complaint filed in this court, have not been taken at this time."

"As the court knows there has not been an answer filed by either Defendant but Medical Center Hospital has filed a 9b motion under the provision of *Federal Rules of Civil Procedure*."

"Although depositions and discovery have not been completed it cannot be known the exact amount of savings nor the medicines that had been taken after hours."

"It is estimated the affiant herein, that at least Medical Center Hospital or some third party took the medicines and were using them in the in-patient pharmacy. Notes were left in the out-patient pharmacy that there was a need for medicines in the hospital/ and in the in-patient pharmacy. It was my conclusion that the medicines taken were used in the hospital/in-patient pharmacy."

"There after Medical Center Hospital, Defendant, would bill Medicaid and/or Medicare of the United States which was granting money to the State of Texas to perform such actions."

"It is correct the out-patient pharmacy has been closed since December 2010. It is not known but it is assumed that the inventory left was in excess of thousands and thousands of dollars, was placed into the in-patient pharmacy and the United States of America was being billed for these medicines when they were purchased for use for the patient."

"Another fraudulent act that was being done by Medical Center Hospital and Complete Rx was the fact that Doctors were sending in prescriptions when neither the Doctor nor the patient had anything to do with the out-patient/in-patient pharmacy. This caused a great deal of problems and Larry Miller did advise administration of these problems. In short the Doctors from other states were not authorized to use the facilities of Medical Center Hospital."

"Until discovery is complete, it cannot be known the amount of billings for Medicare/Medicaid billing but it is expected to be not thousands of dollars but in the millions. Drugs that were used by Medical Center Hospital were billed to the insurance company and/or Medicare/Medicaid"

"Unless destroyed and/or deleted and/or purged the claims set forth cannot be substantiated until discovery has been finished."

"These activities were being done on the premises by the Defendants, after hours, and for money, which benefited both Defendants."

"Further, Affiant sayeth not."

_____
Larry Miller

SUBSCRBED AND SWORN TO before me on this 29th day of April 2011, to certify which witness my hand and seal of office.

HELEN M. SNYDER
MY COMMISSION EXPIRES
February 18, 2013

_____
NOTARY PUBLIC, STATE OF TEXAS